The Fourth & Central Trust Co. *v.* Woolley et al.

(Decided December 17, 1928.)

*Messrs. Paxton, Warrington & Seasongood,* for plaintiff.

*Mr. Jos. T. Harrison* and *Messrs. Peck, Shaffer & Williams,* for defendant Woolley.

*Messrs. Stephens, Lincoln & Stephens,* for defendant Gardner.

Hamilton, P. J. This case is here on appeal from the court of common pleas. It is an action brought by the Fourth & Central Trust Company of Cincinnati by way of interpleader to determine the rights of the defendants Mary E. Woolley, widow of Amos G. Woolley, deceased, and Edna W. Gardner, in a certain fund deposited with the Fourth & Central Trust Company, as trustee. The fund was derived

from the sale of oil rights and oil extracted from lands located in Reagan, Upton and Crockett counties, in the state of Texas.

It appears that Amos G. Woolley died intestate in the year 1919, a resident of Cincinnati, Ohio. At the time of his death he was seized of a one-sixth interest in about 5,000 acres of land, located as above stated. At the time of his death, and until the discovery of oil on the land, the land was of very little value, being practically desert land. It was unfit for agricultural purposes, but was used somewhat for grazing. Woolley left surviving him his widow, Mary E. Woolley, and one daughter, Edna W. Gardner.

Under the laws of Texas, the widow, Mary E. Woolley, received the life estate in the undivided one-third of the one-sixth interest of her deceased husband, Amos G. Woolley. The one-third has never been set off to the widow by metes and bounds. The remainder vested in the daughter, Edna W. Gardner. The owners of the remaining five-sixths, through their agent, executed a lease of a part of the real estate to oil companies; the consideration for the lease being a certain sum in cash and one-eighth of the royalties derived from the sale of oil, if produced. After the execution of the lease by the agent representing the five-sixths interests, the consent of Mary E. Woolley, the widow, to the lease was obtained for a nominal cash consideration. Edna W. Gardner also ratified the lease.

The lessees developed and extracted oil from the land, and the fund in question, deposited with the Fourth & Central Trust Company, is the Amos G. Woolley one-sixth interest derived from the oil

rights and the royalties from the sale of oil taken from the land in question. The widow claims that under the law she, as the life tenant, is entitled to receive one-third of the corpus of the fund, while the contention of the daughter is that Mary E. Woolley, as life tenant, is entitled only to have one-third of the one-sixth impounded and to receive the income therefrom.

The question here for determination is: What interest has a life tenant in the profits from oil taken from the land, developed and produced after the death of the prior owner? This question has not been determined by the court of last resort in this state, but has frequently been before the courts in many of the states of the Union. It is settled law that oil before its extraction is a mineral, and a part of the land. It is also settled law that the life tenant would be punishable for waste if he or she sought to extract the minerals from the land which has not been devoted to mining purposes before the creation of the life estate.

The unbroken line of authorities in several states is to the effect that a tenant for life has no right to operate for oil on the premises in which such estate is held, or to make an oil lease thereon, when operations were not commenced before the life estate accrued. The leading cases so holding are as follows: *Swayne* v. *Lone Acre Oil Co.,* 98 Tex., 597, 86 S. W., 740, 69 L. R. A., 986, 8 Ann. Cas., 1117; *Wilson* v. *Youst,* 43 W. Va., 826, 28 S. E., 781, 39 L. R. A., 292; *Parker* v. *Riley,* 250 U. S., 66, 39 S. Ct., 405, 63 L. Ed., 847; *Blakley* v. *Marshall,* 174 Pa., 425, 34 A., 564; *Stewart* v. *Tennant,* 52 W. Va., 559, 44 S. E., 223; *Strawn* v. *Brady,* 84 Okl., 66, 202 P.,

505; *Brandenburg* v. *Petroleum Exploration,* 218 Ky., 557, 291 S. W., 757; *State* v. *Snyder, Treas.,* 29 Wyo., 163, 212 P., 758.

In Ohio we have the case of *Kenton Gas & Electric Co.* v. *Dorney,* 17 C. C., 101, 9 C. D., 604, which holds that a tenant for life has no right to operate for oil or gas on the premises in which such estate is held, or to make an oil or gas lease therein when operations for oil or gas were not commenced before the life estate accrued.

These decisions would seem to settle the question that a life tenant cannot take mineral from the land without committing enjoinable waste. The question naturally arises: If the life tenant has no interest in the mineral, since the same is a part of the land, and no right to extract the same from the land, what interest could she have in the output? Such an interest could only be on the theory that the life tenant holds possession to the center of the earth, and, if the oil is lawfully severed, she ought to get the benefit.

The other five-sixths interest, together with the remainderman, could not have proceeded with the extraction of the oil from the land without the consent of the life tenant; this for the reason that she is in possession of that part of the estate. She could sell her right of possession. She did sell her consent for the consideration therein named. Were it not for the strong line of authorities fixing the rights of the life tenant to the income from the impounded interest, a serious question might arise as to whether or not the life tenant had not disposed of all of her interest when she sold her consent to the development of the oil. In other words, she sold

her right of possession in so far as the operation for the extraction of oil was concerned. However that may be, the question is not presented here. It arises incidentally from the logic of the situation.

Counsel for the widow urge that there is authority for the giving of the corpus of the one-third of the one-sixth interest to the widow, and argue that the courts have held that the common-law rule as to waste does not apply to dower interest in this country, and that circumstances would give the right to the widow to mine, extract oil, or cut timber, where it was necessary to the sustenance of the widow, and the land was wild land and unfit for agricultural purposes; that under these circumstances the right of the widow to use and enjoy the land would carry with it the right to dispose of the minerals and oil as her interests would require. As authority for this, counsel cite the case of *Crockett* v. *Crockett*, 2 Ohio St., 181. That case was an action in chancery to enjoin a doweress from disposing of timber and cutting timber. The court made some observations in the opinion which seemed to qualify the common-law rule as to waste as affecting the doweress. However, the facts are not such as to make the decision a precedent in this action, or an authority.

In the *Crockett case* the widow was left a life estate in a tract of timber land. She was without funds, and taxes had accumulated. She thereupon sold some of the timber to pay the taxes, and disclaimed any intention to make any further sales of timber. The court in the opinion held that there was no intention on the part of Mrs. Crockett to do or permit anything that might not lawfully be done; that she had a right to sell sufficient timber to pay

taxes and expenses of protecting the property; and that the court thought there was no cause for an injunction. This is not an authority on the question before us.

The main reliance of counsel for Mary E. Woolley's claimed rights is the case of *Seager* v. *McCabe*, 92 Mich., 186, 52 N. W., 299, 16 L. R. A., 247. In that case the court said:

"The rules applicable to a country where landed estates are large and diversified, where the laws of inheritance are exclusive, where the theory of dower is subsistence merely, and where there is a strong disposition to free estates from even that charge, do not obtain in a commonwealth like ours, where estates are small, and the policy of our laws is to distribute them with each generation, where dower is one of the positive institutions of the state, founded in policy, and the provision for the widow is a part of the law of distribution, and the aim of the statute is not subsistence alone, but provision commensurate with the estate. In the present case the grant is by operation of the statute giving the use of all the lands of which the husband was seized. The grant must be held to include the use of these lands, irrespective of whether mines were opened upon them before or after the husband's death."

We have quoted from the opinion at length to show that the court was deciding a case rather than principles of law. Moreover, it is disclosed by the report of the case that the land in question was well known to be mineral land and mineral land only, and was unfit for any other purposes. No oil or minerals were known to be on the land in question in the instant case. In any event the *Seager* v. *McCabe case*

would constitute an exception to the long line of decisions to the effect that the life tenant cannot extract minerals or oil not open prior to the taking effect of the interest.

The point is suggested that the law of Texas would govern in this case, but it is not necessary to determine that question, as the law is not different in this state from that in the state of Texas, other than the fact that our statute (Section 12004 *et seq.*, General Code) designates the interest as "dower interest," while the Texas statute refers to the interest as "life estate" in the one-third. Neither do we think that the fact that the dower interest, or the life interest, has not been set apart, is of consequence, because the widow, by written contract, consented to the lease and the operation under which the royalties were obtained. Counsel for the widow cite the case of *Lenfers* v. *Henke,* 73 Ill., 405, 24 Am. Rep., 263. That case involved the question whether the widow was entitled to dower in mines not open when her right of dower attached, but opened by the reversioner by right of assignment. The court held in the affirmative, on the theory that the opening of the mines by the remainderman would have the same effect as if the mines had been opened prior to the death of the husband. The court bases its decision on the reason for the law rather than the law itself, and it might be said to some extent to be an exception to the rule as pronounced by the great weight of authority.

We are therefore of the opinion that Mary E. Woolley, the life tenant, is entitled to the income from the one-third of the one-sixth interest im-

pounded, and upon her death the corpus to be distributed to Edna W. Gardner.

Since this conclusion is the same as that arrived at by the court of common pleas, a like decree to that entered below will be entered here.

*Decree accordingly.*

CUSHING and ROSS, JJ., concur.