No. 30,692.

CHRISTIN BENSON, *Appellee,* v. J. O. NYMAN, *Appellant.*

(16 P. 2d 963.)

456

Opinion filed December 10, 1932.

*F. J. Oyler, G. R. Gard,* both of Iola, and *Stanley E. Toland,* of Lawrence, for the appellant.

*Hugo T. Wedell* and *T. R. Evans,* both of Chanute, for the appellee.

The opinion of the court was delivered by

HUTCHISON, J.: The appeal in this case is by the defendant from a judgment for two years' rent on an oil and gas lease, made by the husband of the plaintiff to the defendant, and involves many points which the defendant assigns as error.

The lease was executed three days before the death of the owner and lessor, and by his will he gave his wife a life estate in all his property. The defendant, after attempting to discover oil and gas for about three years and regularly paying the rent of $1 per acre each year in advance, assigned the lease, and such assignee in turn assigned it to others until at the time of this action it had reached the fourth assignee. None, however, were made defendants except the original lessee. The lease was made for ten years at the option of the lessee and as long thereafter as oil or gas could be produced thereon in paying quantities. There were 268 acres in the tract, and the lease provided that the lessee should have the right to continue the lease in force from year to year by paying the annual rental of $1 per acre in advance until the royalties exceeded the rental—the royalties and rental not to be less than $1 per acre during the life of the lease. The rental was regularly paid until 1917, when the royalties commenced and continued to exceed the amount of the rental until 1923, and the royalties and rental together, amounting to $268 per annum, were thereafter regularly paid until August 23, 1928. This action, commenced July 17, 1930, was for the rental for two years from August 23, 1928, to August 23, 1930, giving credit for $67.60 royalty received for the first of these two years, and the court made a further deduction for royalties received later during the trial and rendered judgment for $390.97.

The lease contained the following provision:

"It is agreed that it is one of the conditions of this lease, and of the acceptance thereby by the said second party that he and his successors or assigns shall have the right at any time, on the payment of one ($1) dollar to the parties of the first part, their heirs or assigns, to surrender this lease for cancellation after which all payments and liabilities thereafter to accrue under and by virtue of its terms shall cease and determine  . . ."

The issues were made up by appropriate pleadings and the case was tried to the court without a jury. After the judgment was rendered for plaintiff the motion for new trial was overruled.

The appellant urges that the widow of the lessor was not the proper party to maintain this action; that the defendant lessee was not liable on the lease after its assignment and under no circumstances liable after the ten-year term specifically named therein, and that the action was barred by the statute of limitations.

Appellant refers to some answers of the plaintiff upon cross-examination that indicate that she did not want this action commenced and she did not know that the defendant had anything to do with the matter as she had been regularly getting her rent from other parties, but her further testimony shows she authorized her agent to manage the affair because she didn't know anything about it.

Appellant maintains that the evidence did not show the plaintiff as widow of the landowner was entitled to a life estate under the will of her husband, because the will had never been probated or admitted to record in Allen county where the land was situated. A certified copy of the will of her husband, probated in Neosho county, Kansas, showing it to be of record in that county, was offered in evidence to show that plaintiff was made the beneficiary under the will of all the real and personal property of the testator during her lifetime, and an objection to it was sustained because it was not probated and recorded in Allen county. Later, however, when the matter was taken under advisement, the trial court, it is conceded, must have changed its ruling as to the admissibility of such certified copy because its admission was necessary to the conclusion reached. This subsequent holding is urged as error, citing the following statutes:

"Every will, when admitted to probate as above mentioned, shall be filed in the office of the probate court, and recorded, together with the testimony, in a book to be kept for that purpose." (R. S. 22-219.)

"If real estate devised by will is situated in any other county than that in which the will is proved, an authenticated copy of the will and order of probate

shall be admitted to record in the probate court of each county in which such real estate may be situated, upon the order of such probate judge, and shall have the same validity therein as if probate had been had in such county." (R. S. 22-221.)

"No will shall be effectual to pass real or personal estate unless it shall have been duly admitted to probate or recorded as provided in this act." (R. S. 22-232.)

All three of these sections are contained in chapter 117 of the Laws of 1868, but the last one above quoted follows several sections specifically referring to wills executed in foreign states or countries and the last section, 232, may very properly be applicable to that condition rather than a will executed, probated and entered of record in another county of Kansas. R. S. 22-221 unquestionably refers to a case of this kind but does not require that it "be admitted to record in the probate court of each county in which such real estate may be situated" before being admitted or considered in evidence in a civil action. It would have to be a matter of record in the county before an abstract would show title. But is it not here before the trial court like an unrecorded deed, showing to the court where the title rested just as well as if it had been previously recorded? R. S. 60-2854 authorizes the admission in evidence of such papers in the following language:

"Copies of all papers authorized or required by law to be filed or recorded in any public office or of any record required by law to be made or kept in any such office duly certified by the officer having the legal custody of such paper or record under his official seal, if he have one, and the record of all papers authorized or required by law to be filed or recorded in any public office may be received in evidence with the same effect as the original. . . ."

R. S. 22-232, above quoted, while it follows provisions as to foreign wills, may refer to domestic wills as well, but the alternative feature of its conclusion plainly shows two methods of making such wills effectual to pass real or personal estates: either it must be duly admitted to probate, or it must be recorded as provided in this act. The construction urged by the appellant would compel the changing in effect of that disjunctive "or" to the conjunctive "and" and require such wills to be both duly admitted to probate and recorded. The will in this case was duly admitted to probate and placed of record in Neosho county, as the certified copy showed, but it had not yet been recorded in Allen county. *Meyers v. Smith,* 50 Kan. 1, 31 Pac. 670, is cited to show the necessity of the recording, but that was

a foreign will, and in a closing paragraph a suggestion of difference is indicated. In the case of *Henderson v. Belden,* 78 Kan. 121, 95 Pac. 1055, this alternative feature of R. S. 22-232 is mentioned as manifestly referring to the recording of foreign wills as mentioned in one of the sections immediately preceding this one. We think this is the most reasonable construction, instead of applying it to all wills, domestic as well as foreign, and especially when only offered as evidence to show the passing of title to the plaintiff so as to enable the plaintiff to recover on a contract as a beneficiary under her husband's will.

Appellant next contends that a life tenant cannot develop an oil and gas property and thus deprive the remaindermen of the value of their estate, admitting that she might be entitled to the royalties from wells already producing when she came into her estate. But the evidence in the case shows that she came into her life estate three days after the execution of the lease to the defendant and no production was obtained until about three years later. The appellant in no way attempts to harmonize this theory with the rights of the lessee under the terms of the lease. Does the lessee lose all his rights under the lease simply because of the death of the lessor and because the beneficiary under his will takes only a life estate? Appellant's theory is correct and supported by eminent authorities as to the tenant for life by her own contracts developing the mineral resources and exhausting them to the detriment of the remaindermen. Here the landowner made the only contract there is for development and the life tenant is simply receiving the royalties and rentals arising under the contract made by him.

Appellant admits that he may possibly have been liable for rentals under the lease during the ten-year term, although not properly so after his assignment thereof, but claims that under no circumstances could he be liable for rents after the ten-year term expired; that the lease gave the defendant and his assigns an option and contained no obligation for him or his assigns to continue it or be liable under it, citing *O'Neill v. Risinger,* 77 Kan. 63, 93 Pac. 340, and other authorities in support of this construction of the lease. The trouble is the contracting parties in this case added a paragraph not usually found in such leases in order to afford a definite termination of the lease at any time the lessee or his assigns might wish to avail themselves of that privilege by paying the sum of one dollar and

surrendering the lease for cancellation. This definite and specific manner of terminating the lease naturally excluded others not mentioned or which in its absence might have been implied. This was never done. This special provision was contained in the lease in the case of *Farlow v. Frankson,* 110 Kan. 197, 203 Pac. 299, and it was there held—

"Under an oil and gas lease providing that it shall cease to be effective if no well is begun within a certain time, unless a specified periodical rent is paid in advance, and that the lessee may at any time bring the lease to an end by surrendering it and paying one dollar, where the lessee commences the payment of rent he is liable therefor until he avails himself of the surrender privilege." (Syl. ¶ 2.)

This lease was not terminated until this action was commenced, which is stipulated to be the result of an action in court in a later clause of the lease. Appellant reasons that having assigned the lease he was not in a position to terminate it by surrendering the lease for cancellation. This is undoubtedly true, but he could have protected himself in his assignment if he had seen fit after inserting this rather unusual provision as to the method of terminating the lease.

Appellant invokes the statute of limitations, computing the time from the expiration of the ten-year term. From what has been said, it is apparent, we do not think this cause of action arose or existed at that time. It arose when the rental payments ceased, viz., August 23, 1928, and this action was commenced in less than two years thereafter.

We find no error in the proceedings, in the conclusion reached, nor in overruling the motion for a new trial.

The judgment is affirmed.