IN RE ESTATE OF WERNET.

(Decided October 13, 1938.)

*Mr. Oscar M. Abt* and *Mr. J. Stewart Ake,* for appellant, Leland Kerstetter, as executor of the estate of Sophia Wernet.

*Mr. Urban A. Wernet* and *Mr. Paul R. Lamiell,* for appellee, Urban A. Wernet, as executor of the estate of Louis J. Wernet.

SHERICK, J. This action was commenced in the Probate Court by Sophia Wernet, the widow of Louis J. Wernet, deceased testator. Her complaint is found within her motion therein filed, which prays that the executor of her husband's estate may be directed and ordered to pay her the full sum of $3,600 set off to her for her year's support by the appraisers of her husband's estate. All parties interested were made parties to this demand. Minor defendants answered in the general form pursued by guardians *ad litem.* These papers constitute the pleadings in the cause. Since the commencement of the action Sophia Wernet has died. Her executor, who has been substituted in her stead, now prosecutes this appeal on questions of law.

The will of the testator in part contains the following provisions, after the direction of payment of debts and the making of a specific bequest and devise to his widow:

"The balance of my estate, both real and personal, and of every nature whatsoever, and wheresoever situate, I do give, bequeath and devise to Urban A. Wernet, * * * in trust however, for the uses and purposes hereinafter named, to wit:

"During the life of my wife, Sophia Wernet, shall receive all the income arising from my estate, whether the same shall arise from rentals, interest upon money or dividends upon stocks, and shall be chargeable with the expense arising against the estate. Said trustee shall hold, manage and control said property during the continuance of the trust with power as to real estate, to improve, lease, rent and with the consent of

my wife, Sophia Wernet, sell and convey the same or any part thereof in exercise of his discretion.''

The amount of the personal estate was small and insufficient to pay the year's allowance. The amount of the real estate is considerable as was also the income therefrom. One parcel of realty consisting of forty-four and one-half acres, after the testator's death, was found to be located in natural gas producing territory. Thereupon the widow and the executor leased this tract. A well was drilled thereon which produced considerable income, profit or royalty. Out of the sums so received by the executor, he paid to the widow a sum approximately equal to the year's allowance. Checks issued for these payments were marked ''income.''

It was contended by the executor in the Probate Court that the widow possessed a life estate in the gas-producing tract and the sums paid her as income were in fact a part of the corpus of the estate and not income. From these two premises it is argued that the widow had been paid the amount of her allowance. The Probate Court adopted this theory and so held. Of this judgment the appellant now complains.

From the terms of the will, as quoted, it clearly appears that Sophia Wernet did not take a life estate in the estate's realty. The realty was devised to the executor in trust and he qualified as such trustee. The will further provided that, at the expiration of the trust, he should convey ''all of my estate then remaining'' to testator's residuary devisees. A life tenant possesses legal title. The widow received but an equity therein. She was not entitled to occupancy, nor could she, without the executor's consent, lease, alienate or convey a legal title therein, all of which are attributes of a life estate. We think it aptly held in *Schwan, Exr.,* v. *Meinert,* 56 Ohio App., 336, 10 N. E. (2d), 951, that a trust estate or equitable interest in real prop-

erty and a life estate cannot exist in the same property at the same time.

The appellees point to *Fourth & C. Trust Co.* v. *Woolley,* 31 Ohio App., 259, 165 N. E., 742, and kindred cases, which correctly hold that when a life tenant removes gas from the ground, after the death of the prior owner, the product or income derived therefrom is realty, a part of the corpus of the estate. We agree that this is ordinarily sound law, in a proper case, but we are unable to perceive its application to the matter in controversy, for the reason that the widow is not a life tenant.

Clearly, if one desires by will to create a trust in realty during another's life, in favor of that other, he may do so; and, if a testator desires, he may engraft upon that trust such beneficial interests therein in the recipient's favor as he may choose. The testator in this instance had in mind that all others entitled to share in his bounty were to be postponed in enjoyment until the death of his wife. He directed his executor to pay "all the income arising from my estate" from whatever source, to his wife. The word "income," as here used, is an all embracing term, for if realty produces royalties, it produces income. We perceive no difficulty in reaching this conclusion.

In *McClintock* v. *Dana,* 106 Pa., 386, a testatrix devised realty to her executor in trust for the benefit of her daughter for life, and after her death the corpus of the estate was to go to the daughter's children. The executors were empowered to lease or sell realty. They leased certain coal lands, which were unopened when the testatrix died. Coal was removed from the land and a profit was thereby obtained therefrom. The court held in the syllabus "that the rent or royalty thus received was payable by the trustees to the daughter as *cestui que trust* for life, as 'income' of the estate within the meaning of the will," for the

reason that the terms of the will extended her right of enjoyment beyond that of a mere life tenant.

A like understanding of the exception to the generally accepted rule is to be found in *Eager's Gdn.* v. *Pollard,* 194 Ky., 276, 239 S. W., 39. We quote the second paragraph of the syllabus:

"Royalties derived from oil wells opened upon land after the death of the owner and not in pursuance of a contract executed by him are usually considered as a part of the corpus and not as income between life tenants and remaindermen, but when opened in pursuance of an express or implied power conferred by his will they are not distinguishable from those opened after his death in pursuance of his contract and royalties derived therefrom are considered as income, unless the will provides otherwise."

It follows that the Probate Court's judgment must be and the same is reversed. Coming now to enter the judgment which the trial court should have entered, it is ordered that appellee executor, out of his trust estate, pay to the appellant executor the year's allowance set off to testator's widow.

*Judgment reversed.*

MONTGOMERY, P. J., and LEMERT, J., concur.

(Decided November 8, 1938.)

ON MOTION to dismiss.

SHERICK, J. After a decision of this cause upon the merits but before journalization, the appellee moved to dismiss the appeal for the reason that the matter was not appealable and this court was therefore without jurisdiction to entertain the appeal.

Although it was not expressly stated in our opinion upon the merits that this cause was directly appealed

from the Probate Court to this tribunal, such of course is the fact.

It is recognized by both parties that Courts of Appeals, since their creation in 1912, are constitutional courts which have their jurisdiction conferred, limited and defined by Section 6, Article IV of the state Constitution. We recite its provisions in part:

"The Courts of Appeals shall have * * * appellate jurisdiction in the trial of chancery cases, and, to review, affirm, modify, or reverse the judgments of the Courts of Common Pleas, Superior Courts and other courts of record within the district as may be provided by law."

Section 7 of Article IV makes Probate Courts, courts of record. And now quoting from the recent case of *Squire, Supt.,* v. *Bates,* 132 Ohio St., 161, 163 and 164, 5 N. E. (2d), 690, we find it again reiterated:

"It is firmly established in this state that the appellate jurisdiction thus conferred can neither be enlarged, curtailed, nor limited, but that the General Assembly may provide the method of exercising such appellate jurisdiction. *Commonwealth Oil Co.* v. *Turk,* 118 Ohio St., 273, 275, 160 N. E., 856, 857."

The latter portion of the court's comment is engendered by the phrase "as may be provided by law." With this interjection, we continue and set forth the next succeeding paragraph of the court's opinion, which reads:

"Admitting the validity of a statute which would authorize the appeal of a chancery case direct from a Probate Court to a Court of Appeals, do we have such a case before us?"

The matter therein involved was the questioning of a trustee's account. It was held to be a purely statutory question and not a chancery matter and therefore not appealable as such. The court had directly under consideration Sections 10501-56 and 10501-62, General Code. The latter was held unconstitutional; but con-

cerning Section 10501-56, it was said, "the constitutionality of this measure cannot be successfully challenged." It provides in part that an "appeal *may* be taken to the Common Pleas Court" from an order effecting the settlement of a trustee's account. (Italics ours.)

Examining the *Bates case* further, as appears from its report, it shows the appeal to have been perfected on November 2, 1935, from an order of the Probate Court, and that the Court of Appeals dismissed the appeal because it was not a chancery matter. The court in the course of its opinion discourses upon various provisions of the new Appellate Procedure Act and their relation to Sections 10501-56 and 10501-62, General Code, particularly Section 12223-3 thereof. Frankly, for what purpose, we are unable to understand, inasmuch as the act itself, Section 12223-49, General Code, expressly provides "this act shall become effective on the first day of January, 1936, and shall apply to the proceedings in any action where the final order or judgment appealed from is rendered *after that date.*" (Italics ours.) The Bates appeal bears date of November 2, 1935. It follows that the Appellate Procedure Act could have no application to the appeal, but that it was governed by the then existing law.

As we read the *Bates case* with respect to Section 10501-56, General Code, as it then and does now exist, it is held that a questioning of a trustee's account is not in chancery and not appealable as such on law and fact. It is inferentially held that the word "may" therein, when considered in its relation to the constitutional clause, Section 6, Article IV, "as *may* be provided by law," is to be construed as legislative creation of a proper "method of exercising such appellate jurisdiction" in equitable causes. (Italics ours.) In other words, the method of appeals from Probate

Courts on law and fact *must* follow Section 10501-56, General Code.

The instant cause in its inception had its principal question enmeshed in the interpretation of a trust created by a will. It therefore presented a chancery matter. See *Crowley, Admr.,* v. *Crowley,* 124 Ohio St., 454, 179 N. E., 360. It, however, did not continue as such, for the appeal to this court is predicated upon a question of law and not law and fact. With this thought in mind and the fact that this appeal is or may be governed by certain provisions of the new Appellate Procedure, Act, not as yet noted, we shall desirously proceed with an apology for our seemingly long comments on the *Bates case,* which we deem proper because both sides, in part, rely upon it.

The Appellate Procedure Act contains Section 12223-3, General Code. It provides in part:

"Every final order, judgment or decree of a court * * * may be reviewed as hereinafter provided, unless otherwise provided by law, except that appeals from judgments of Probate Courts * * * upon questions of law and fact shall be taken in the manner now provided for in General Code Sections 10501-56 to 10501-61, inclusive * * *."

The portion from the word "except" on, may be elided from this consideration because this is an appeal on a question of law. Looking to the first portion of this statute as set forth, it is clear that the section is declaratory of the jurisdiction conferred upon this court by Section 6, Article IV of the state Constitution. The succeeding sections "provide by law" the method of exercising appellate jurisdiction, that is, the required procedural steps which are to be followed in a given case. The section, however, contains a limitation, for it reads "unless otherwise provided by law." Our search must therefore be extended to learn if any exception statutes have been enacted.

Prior to the Appellate Procedure Act there existed

Section 12241, General Code. It provided how proceedings in error upon certain matters arising in the Probate Court should then be prosecuted. It directed that such proceedings "may" be carried to the Court of Common Pleas. Such was then the practice, but the new act repealed Section 12241 and enacted Sections 12223-27, and 12223-3 which refers to Section 10501-56, General Code. Section 12223-27 provides:

"A judgment rendered or final order made by a Court of Common Pleas, a Probate Court or by any other court of record or by a judge of any of such courts may be reversed, vacated or modified upon an appeal on questions of law by the Court of Appeals having jurisdiction in the county wherein the Common Pleas or other court of record is located, for errors appearing on the record."

This section is again declaratory of the constitutional provision. It is not followed by any section prescribing a special manner of procedure differing from the general rules for appeals as found in Sections 12223-4 to 12223-21, inclusive, General Code. The appellant follows this general method of perfecting and prosecuting her appeal and relies upon the constitutional provision and Sections 12223-3 and 12223-27, General Code.

The appellee, however, maintains a special section or sections exclusively control this appeal, and that it is therein otherwise "provided by law." These sections are Sections 10509-190 and 10509-191, General Code. They are found embodied in the new Probate Code (114 Ohio Laws, 442 and 443) under the title of Executors and Administrators, subtitle Distribution. The effective date of this act was January 1, 1932, four years before the effective date of the Appellate Procedure Act. As indicated by the subtitle, both sections have to do with the enforcement of orders of distribution. They provide for appeals and error proceedings which *may* be taken to the Common Pleas Court and

to the Court of Appeals "from any order, judgment or decree * * * relating to the enforcement of orders of distribution."

In view of appellee's claim respecting the applicability of Sections 10509-190 and 10509-191, General Code, and because it is said that "the matter in question solely and exclusively involves the distribution of part of the estate," it behooves us to consider just what is understood by an "order of distribution." In so doing little difficulty is encountered. It is the final direction of a Court of Probate made to an executor after the payment of the debts of an estate and the confirmation of the executor's accounts authorizing the personal representative to divide the balance of the estate remaining in his hand among those entitled to receive it in proper portions.

Surely the judgment from which the present appeal is prosecuted is not such an order. Just because payment of a year's allowance would diminish the distributive balance of an estate, it does not follow that its order of payment is an order of distribution. A year's allowance is not understood to be a distributive portion of an estate. It is unlike a dower interest which ends at the widow's death, because a year's allowance survives death. Since the time of *Allen* v. *Allen's Admr.*, 18 Ohio St., 234, it has been consistently considered that a year's allowance made by the appraisers of an estate for the benefit of a widow and children is a debt of the estate. It is therefore not an item entering into the distribution of the assets of an estate, but, as a debt, it should be paid as other obligations of an estate are paid and charged as such and credit asked as in the payment of all debts.

The appellant's action is therefore in fact one to collect a debt. It is not an appeal to this court from an order of distribution upon which the executor contemplates a division of estate property in whole or in

part, or in money or in kind, which the appellant conceives to be improperly made or about to be made.

It is the judgment of the court that the method of appeal selected by the appellant is proper and confers upon this court jurisdiction of the cause. The motion is overruled, the former judgment of the court is adhered to, and it is ordered to be forthwith journalized along with the order herein made.

*Judgment accordingly.*

MONTGOMERY, P. J., and LEMERT, J., concur.