## BARTON v. WARNER et al.
### No. 10945.

Court of Civil Appeals of Texas. Galveston.
May 9, 1940.

304

Kennedy & Granberry, of Crockett, for appellant.

Earle P. Adams, of Crockett, and J. D. Pickett, of Palestine, for appellees.

CODY, Justice.

This is a suit by appellees to set aside a mineral deed dated April 2, 1938, purporting to convey to appellant an undivided 9-acre royalty interest in the Jim Burns place in Houston County, which consists of two tracts—one 132 acres, and one of 91 acres. The ground relied upon by appellees is false representations of the respective rights of appellees and appellant in the properties exchanged between the parties.

Jim Burns and his wife are the common source of title. They had several children, among them a daughter named Vina. On April 11, 1933, after the death of Jim Burns and wife, their children, including the daughter, Vina (who was joined by her husband, Riley Smith), executed an oil and gas lease to W. D. Nixon, covering the aforesaid two tracts. This lease was later assigned to the Humble Oil & Refining Company and is still in force. Vina Burns had an illegitimate daughter, named Rebecca, before she married Riley Smith. Vina had no children by Riley Smith, and her daughter married Oliver Warner. On October 30, 1933, Vina died intestate, and, as stated by appellant in his original brief, her daughter, Rebecca, succeeded to her mother's share in the Burns' place, the two tracts aforesaid, subject, of course, to the one-third life estate therein to which Riley Smith, Vina's surviving husband, succeeded according to the laws of descent and distribution. Appellant purchased such life estate, or at least the major portion of it, from Riley. Appellant then exchanged such life estate, or portion acquired from Riley with appellees for 9 acres of minerals in fee. And this exchange is the transaction which appellees' suit was brought to set aside. The interest of Vina (to which her daughter and husband succeeded as above indicated) consisted of an undivided 37 acres in the Jim Burns place in Houston County, Texas.

Appellees alleged that appellant fraudulently induced them to execute and deliver the mineral deed (of April 2, 1938) by falsely making representations to appellees, in substance, that he, appellant, owned a 12-acre interest in the land and minerals; and that Riley Smith (whose rights appellant acquired, at least as to 9 acres thereof) had a right to one-third of the money which he, appellant, had paid appellees for the mineral deed of March 31, 1938, as the vendee of Riley Smith; and that if the 37 acres ever produced oil, he (appellant) would be entitled to receive one-third of the royalty produced from the wells on said 37 acres.

In response to special issues the jury found: (1) That appellant represented to appellees that Riley Smith had a right to one-third of the money that appellant paid appellees for the mineral deed of March 31, 1938, and that appellant had bought Riley Smith out and now had the right to one-third of such money; and that if said 37 acres ever produced oil appellant would be entitled to one-third of the royalty; (2) that such representations were made to in-

duce appellee Rebecca Warner to execute her mineral deed of April 2, 1938. The jury also found the other supporting elements of fraudulent representations, inclusive of the finding that appellant did not himself believe such representations. The jury found that the cash value of the Riley Smith life estate was $60 on April 2, 1938, and its intrinsic value on that date was $239. The jury found that both the cash market value per acre of the 9 acres of minerals conveyed by appellees to appellant on April 2, 1938, and the intrinsic value thereof was $25 per acre.

It is appellant's principal contentions: (1) That, as a matter of law, appellant, as the vendee of Riley Smith, the life tenant, was entitled to one-third of the royalties produced from the 37 acres by the operation of the lease executed thereon by the life tenant's wife, Vina, in her lifetime, now owned by the Humble Oil & Refining Company, and that appellant's representation was therefore true; (2) that the jury having found that the life estate acquired by Riley Smith was of the value of $239, and that the 9 acres which Rebecca exchanged with appellant was of the value of $225, that Rebecca had therefore suffered no loss. (It should here be added, to avoid confusion, that it is appellees' contention, which is apparently supported by the record that appellant acquired only about 9 acres of Riley's life estate, and it was only such 9 acres that appellant exchanged with Rebecca.)

It may be conceded that it is true as a matter of law that Riley Smith, the life tenant, was entitled to one-third of the royalties produced from the 37 acres by the operation of the covering lease now owned by the Humble Company, which was executed by the mother of appellee in her lifetime. "* * * a tenant for life, being entitled to the profits of the land is entitled * * * to the royalties of wells that were open and in operation when the life estate commenced, and not merely to the income from such royalties." Again, "The life tenant, in the absence of a contrary intention manifested by the person who created the life estate * * * is entitled to the rentals or royalties (not only the interest thereon) from wells opened after the commencement of the life estate under authority granted, through lease or otherwise by the person who created the life estate." (Citing authorities.) 43 A.

L.R. pp. 811, 813, 814. And, see 3 Summers Oil and Gas, Permanent Edition, § 613, p. 547. But even so, as we understand the facts in this case, the representation by appellant was not so limited to comply with said rule of law; for he did not state that he (as the vendee of Riley) was entitled only to one-third of the royalties which would be produced by operating the Humble Company lease executed by appellee Rebecca's mother—and at the time the representation was made there was no production under said lease, but stated his ownership without such limitation. Furthermore, his representation as to his right to the money (which was the purchase price of a portion of the Riley Smith life estate which Riley had contributed to another sale, along with the other Burns heirs) is not, we believe, defended by appellant. The falsity of that representation alone, so it seems to us, is sufficient ground to warrant the rescission. But however that may be, the statement actually made by appellant relative to his royalty interest was not true as a matter of law as he contends, and the fact that, had he limited such statement which he did make (and which he confessed he believed to be untrue at the time it was made, but made to induce the trade) to comply with a correct statement of law, cannot now avail appellant, as it was not in fact correct. The contention of appellant that his representation aforesaid, which induced the transfer to him from appellee Rebecca, is true as a matter of law is overruled. The representation could therefore form the basis for rescinding the exchange, and appellant's assignment to the contrary is overruled.

It is the settled law in Texas that a plaintiff must show that he has suffered a pecuniary loss in exchange of properties, induced by false statements, before he is entitled to rescission. Moore v. Cross, 87 Tex. 557, 29 S.W. 1051; Russell v. Industrial Transportation, 113 Tex. 441, 251 S.W. 1034, 51 A.L.R. 1; Bryant v. Vaughn, Tex.Sup., 33 S.W.2d 729; Nance v. McClellan, 126 Tex. 580, 89 S.W.2d 774, 106 A.L.R. 117. But we cannot sustain appellant's contention to the effect that appellees failed to show that Rebecca did not suffer any pecuniary damages by reason of the exchange. While it is true that the jury found that the intrinsic value of the life estate of Riley Smith in the land on April 2, 1938, was $239, Riley Smith owned no life

estate in the land on April 2, 1938, and we are at a loss to understand just what quantity of minerals the jury was placing this value of $239 on. Now a third of 37 acres is 12⅓ acres, and Riley had sold off 3 acres of his life estate before conveying to appellant. As the jury found both the cash and intrinsic value of the minerals was $25 per acre, it is quite evident that in assessing the valuation of the life estate of Riley Smith that they were not passing upon the value of his life estate in the 9 acres which Riley had transferred to appellant. There is no jury finding as to what the value of the life estate in 9 acres of minerals belonging to appellant was on the day he transferred them to Rebecca for 9 acres of minerals in fee. In view of the fact that the life estate in the 9 acres which appellant transferred to Rebecca was for the life of Riley, a negro man then 65 years old, the life estate in said 9 acres was necessarily less valuable than the estate in fee in 9 acres. We must therefore accordingly overrule appellant's contention that Rebecca was not shown to have suffered any pecuniary loss by reason of the transaction.

By supplemental brief, filed after appellees had answered his original brief, appellant raises the point that, since Rebecca has sought in this action to recover an interest in real estate as the heir of her deceased mother, who in turn had owned same as heir of her deceased parents, it is necessary that Rebecca allege and prove that each of her said ancestors died intestate, that no administration was had upon their several estates, and that there was no necessity therefor, and in the absence of such pleadings and proof the trial court should not have awarded appellee Rebecca title to the lands sued for. In support of this contention appellant cites Pure Oil Co. v. Tunnell, 126 Tex. 57, 86 S.W.2d 207; Olsan Bros. v. Miller, Tex.Civ.App., 108 S.W.2d 856.

■■ Now it is the general rule in this state that where an heir brings suit, as such, for title and possession of property, whether real or personal, belonging to the estate of his ancestor, he must both allege and prove that there is no administration pending on such estate, and no necessity for one. See the Tunnell and Miller cases mentioned above as cited by appellant. But we do not understand how appellant can raise this point at this late date. Had he urged a general demurrer to appellees' petition and insisted at the time he should have urged such demurrer in due order of pleading, we must assume that appellees would have then amended their pleadings to the effect that there was no administration pending and no necessity therefor, and have proved such pleading as so amended. We do not see why, if appellant should choose to waive such pleading and proof, appellees could not accept such waiver. But, however that may be, we do not believe the rule referred to applies here. This suit is in effect simply one to cancel a deed from Rebecca to appellant, so as to restore the parties to their situation as it existed before said deed was executed. What Judge Critz said in Youngs v. Youngs, Tex.Com. App., 26 S.W.2d 191, 194, in distinguishing that case from the Groesbeck case, Groesbeck v. Groesbeck, 78 Tex. 664, 14 S.W. 792, applies here: "The post-nuptial agreement sought to be set aside did not affect the estate of the deceased husband, as by its terms it was merely an agreement that in case the husband died without issue of the marriage his property was to descend and be distributed among his heirs as if no marriage had ever taken place between him and his said wife. In other words, the contract sought to be annulled merely deprived the wife of her rights as an heir of her husband if he died without a child of such marriage. The suit to cancel this instrument, no matter which way it went, did not affect the size, property, or value of the estate, nor any creditor thereof. It merely affected those who should take as heirs when the estate was finally partitioned."

In the same way, in the instant case, the suit to cancel the deed to appellant cannot affect the size, property or value of the several estates, nor any creditor thereof, it will merely determine as between appellee Rebecca and appellant whether he or she shall take the 9 acres in fee, subject to, or after administration had on said estates, were there any necessity for administration thereon.

There being no reversible error shown, the judgment of the court below should be affirmed; it is accordingly so ordered.

Affirmed.