No. 35,229

ORVA E. RATHBUN et al., *Appellees,* v. BYRON WILLIAMS et al., *Defendants,* (ADDIE M. ROSS, RALPH E. ROSS, Individually and as Trustee Under the Last Will and Testament of C. O. Ross, Deceased, et al., *Appellants.*)

(121 P. 2d 243)

Opinion filed January 24, 1942.

*J. W. Dalton,* of Sedan, for the appellants.
*Riley Robbins,* of Sedan, for the appellees.

The opinion of the court was delivered by

DAWSON, C. J.: This was an action to quiet title to certain mineral interests in two eighty-acre tracts of land in Chautauqua county which plaintiffs had acquired by purchase at sheriff's sale held pursuant to a judgment in tax foreclosure proceedings.

The defendants were the owners of certain royalty rights arising out of those mineral interests which, it was alleged, had been extinguished by the proceedings in foreclosure.

The salient facts were these: On November 7, 1903, the fee title owners of the two tracts of land involved herein executed an oil and gas lease covering the property. That lease is still in force; oil was discovered thereon; and the present owner of the lease is the Sinclair Prairie Oil Company. In 1916 Byron Williams acquired the title to the lands in controversy. On or about June 27, 1918, Williams and wife executed a deed to eighty acres of this property to some grantee,

reserving to themselves all the oil, gas and other minerals in or under the land. By two other deeds the remaining eighty acres was similarly conveyed to undisclosed grantees, the grantors reserving to themselves all the mineral interests except on a small parcel thereof of no present concern.

Following the severance of the surface and subsurface interests in these lands, those interests were separately listed for taxation.

In 1916, Byron Williams, owner of the subsurface or mineral rights, sold his royalty interest in the oil production on the lands to his wife, Lina D. Williams, and executed a transfer order notifying the Prairie Oil & Gas Company (apparently at that time the marketing concern) to give her credit for oil received accordingly. In 1920 Lina D. Williams sold her royalty interest to C. O. Ross and executed a transfer order notifying the Prairie Oil & Gas Company thereof. The Prairie Oil & Gas Company regularly paid the royalty according to these transfer orders until its corporate activities were taken over by its successor, the Sinclair Prairie Oil Marketing Company, which also continued to pay the royalty without question. Following the receipt of these transfer orders the Sinclair company and its predecessors have made annual returns to the county clerk showing the ownership of the royalty interest to be in C. O. Ross, and that interest has been assessed for taxation as personal property and the taxes thereon were regularly paid by him until his death and thereafter by his heirs or in their behalf. During all these years since 1916 Byron Williams has continued to be the owner of the mineral interests in the lands involved.

Many years ago, date not shown, the board of county commissioners adopted a resolution authorizing that on the preliminary sale of lands for delinquent taxes such lands should be bid in by the county treasurer as authorized by statute. In the years 1932 to 1937, inclusive, Byron Williams failed to pay the taxes on his mineral interests and they were advertised and sold and bid in by the county treasurer in conformity with statutory provisions. (G. S. 1935, 79-2301 *et seq.*)

In 1938 the board of county commissioners, on authority of G. S. 1935, 79-2801 *et seq.*, directed the county attorney to bring proceedings to foreclose the county's tax liens on all lands on which the taxes had become delinquent and which had been bid in for the county by the county treasurer. Accordingly such an action was begun, numbered and entitled, "5819, The Board of County Com-

missioners vs. Robert Brown, et al." As permitted by the pertinent statute, many and divers defendants having interests in many and divers tracts of Chautauqua county land were impleaded in the action. The petition contained many separately numbered causes of action—the fifty-first and fifty-second of which dealt with the county's tax liens on the property of present concern. In these it was alleged that Byron Williams was the owner of the mineral interests in the described lands and that the Sinclair Prairie Oil Company claimed some interest therein. There was no allegation as to any claim of interest in the defendants who are appellants here, but they were all named as defendants in the action and were duly served with personal or publication summons. All parties concerned in the issues involved in the fifty-first and fifty-second causes of action made default, and on November 10, 1838, judgment in foreclosure was entered in favor of the board of county commissioners, decreeing the county's right to a first lien on the Williams' interest in the lands and that his interest be sold to satisfy that judgment lien, all of which following in due order and such interest was sold to Orva E. Rathbun. On January 21, 1939, the court confirmed the sale and directed the sheriff to execute deeds of conveyance to the purchaser. This, too, was duly done in time and season.

To quiet plaintiff's title this action was begun. Plaintiffs pleaded the pertinent facts. Defendants joined issues thereon. The cause was tried by the court. No sharp dispute of material fact was developed by the evidence. The trial court made extended findings as summarized in our statement above, and gave judgment for plaintiffs as prayed for. Included in the judgment was an order to the Sinclair Prairie Oil Marketing Company to account to the plaintiffs for the royalties withheld by it since plaintiffs acquired the Byron Williams mineral interest by purchase at the foreclosure sale on January 21, 1939.

Defendants appeal, urging several matters which will be considered as we proceed. And, first, a cursory review of the pertinent law may be helpful.

The term "royalty" or "royalty interest" is a familiar expression in Kansas business circles. It is the compensation paid to the owner of the mineral interest in land where gas, oil, or other inorganic substance is produced and usually consists of one-eighth or other agreed share of the financial proceeds thereof. (*Robinson v. Jones,* 119 Kan. 609, 240 Pac. 957; *Bellport v. Harrison,* 123 Kan. 310, 255

Pac. 52.) The owner of the mineral interest may sell and assign the royalty interest. To apprise the marketing company that such sale has been made the custom is for the owner of the mineral interest to notify it with directions that all accruing royalties should thereafter be paid to the assignee. This notification is called a transfer order; and an assignee of the royalty interest may in turn sell it to another assignee and another transfer order is served on the marketing concern accordingly. Such royalty interests are personal property and taxed as such. (G. S. 1935, 79-330.) On the other hand, whenever the mineral interest in land is owned separately from the surface rights, each interest is regarded as real estate and taxed separately to the respective owners thereof. (G. S. 1935, 79-420; *Mining Co. v. Crawford County,* 71 Kan. 276, 80 Pac. 601; *Gas Co. v. Neosho County,* 75 Kan. 335, 338, 89 Pac. 750; *Shaffer v. Kansas Farmers Union Royalty Co.,* 146 Kan. 84, 69 P. 2d 4; *Hushaw v. Kansas Farmers Union Royalty Co.,* 149 Kan. 64, 86 P. 2d 559.) See, also, instructive articles in 8 J. K. B. 25; id. 241, and 9 J. K. B. 29.

When the owners of lands, surface interests, and subsurface or mineral interests, fail to pay their taxes, what happens? The lands are sold at delinquent tax sale and bid in for the county (G. S. 1935, 79-2301 *et seq.*), and if those delinquent taxes continue to mount up from year to year without redemption, the county commissioners, at their discretion, may order the county attorney to institute judicial proceedings to foreclose the county's tax liens (G. S. 1935, 79-2801), as was done in the case at bar.

Turning now to appellants' particular objections to the judgment, they call attention to the fact that the owner of the oil and gas lease was not made a party to the action. But it is not shown that the lessee was a necessary party—so far as an adjudication of the rights of the present litigants are concerned.

It is next suggested that plaintiffs were permitted in their amended petition to take a different position from that taken in their first petition in respect to the existence of a valid oil and gas lease on the lands in controversy. But that point is of no consequence insofar as the judgment in this action to quiet title in plaintiffs as purchasers at the foreclosure sale is concerned.

It is next urged that a sale of property for taxes is strictly statutory and conveys only the property on which the sovereign has a lien for taxes. This is good law, of course, particularly in respect

to tax-sale certificates issued by the county treasurer (G. S. 1935, 79-2314), and to the tax deed issued by the county clerk to the holder of a certificate of sale as provided in G. S. 1935, 79-2501. A sale of real property pursuant to a judgment in judicial proceedings foreclosing a lien—a tax lien or any other lien—is not so easily gotten rid of, especially after the sale in foreclosure has been confirmed by the court. But conceding, without deciding, that even a judicial sale of property subjected to tax foreclosure proceedings is to be strictly scrutinized and that even a technicality may vitiate it (*Montgomery County v. Wilmot*, 114 Kan. 819, 823, 221 Pac. 276), just what flaw was there in the foreclosure proceedings sufficient to vitiate the sale of the mineral interest of Byron Williams and wife in the lands in controversy which were sold pursuant to the judgment in favor of Chautauqua county, which sale was confirmed by the court on January 21, 1939? Nothing is urged against those proceedings; the contention simply is that the extinction of the Williams' title did not terminate the royalty interest of the Ross heirs which was dependant on the Williams' title. It is argued that since the royalty interest of the Ross heirs was separately assessed for taxation as personal property and the tax thereon had been regularly paid, some theory of equity should be applied to give the royalty a continuing vitality after the source of it has been extinguished by operation of law. In *Van Doren v. Etchen*, 112 Kan. 380, 211 Pac. 144, it was said:

"The foreclosure of the tax lien and sale of the property pursuant thereto were prerogative acts of sovereignty whereby a new and independent title issued from the public to a new grantee, and all rights dependent on the old fee title were swept away." (p. 381.)

In the case just cited the rights dependent on the old fee title were those of a holder of an unrecorded warranty deed, which was certainly entitled to as much consideration in a tax foreclosure proceeding as those of a holder of an oil royalty right dependent upon mineral rights which are extinguished in such proceeding. Even the familiar tax deed, which has its origin in the administrative routine of public business, and not in the strict punctilio of judicial procedure, has the legal effect of destroying all prior grants, liens, charges and encumbrances in existence at the time the taxes were levied and for the nonpayment of which the tax deed has been issued. (*Douglass v. Lowell*, 64 Kan. 533, 67 Pac. 1106; *Main v. Doty*, 126 Kan. 667, 271 Pac. 287.)

Counsel for appellants argue that since the royalty interest of his clients was regularly reported by the marketing company to the county clerk for taxation, and the annual taxes thereon were promptly and regularly paid, this situation should be declared to create a unity of property having an independent life of its own, and not destroyed as a mere incident of the mineral interest in the property of the delinquent taxpayers Williams and wife from whom the Ross heirs trace their royalty interest. But this court cannot legislate and it cannot by judicial declaration change the inherent nature of a royalty interest. And speaking of equity, it is not easy to discover any peculiar hardship in the judgment of which appellants complain. They were impleaded in the foreclosure proceedings, not as necessary parties perhaps, but as proper parties. They were apprised of the fact that the Williams' mineral interest on which their royalty interest was dependent was in peril of being wiped out by foreclosure of the county's paramount lien. They did nothing then. There is nothing the courts justly can or should do for them now. And as for the fact that this plaintiff was an employee of the Sinclair Prairie Oil Company, present holder of the lease, there is nothing in the law pertaining to sales of property in foreclosure which bars anybody from purchasing the property provided he is the highest bidder and has the ready money to pay for it.

There is no error in the record and the judgment is affirmed.