No. 35,734

Mary Ellen Hickey, *Appellant,* v. Edd C. Dirks, and Jessie G. Dirks, His Wife, *Appellees.*

(133 P. 2d 107)

Opinion filed January 23, 1943.

*Clifford Sullivan,* of Howard, argued the cause, and *Chas. L. Carroll,* of Great Bend, and *Carter Smith,* of Tulsa, Okla., were on the briefs for the appellant.

*Herbert Diets,* of Great Bend, argued the cause for the appellees.

The opinion of the court was delivered by

Hoch, J.: The principal question presented is whether a certain instrument designated "Sale of Oil and Gas Royalty" constitutes a mineral deed or a conveyance of royalty interest. If it is a mineral deed, carving out of the fee a present subsurface estate in the oil and gas in place, the instrument is void under section 79-420, G. S. 1935, not having been recorded within ninety days after execution or listed for taxation. On the other hand, if the instrument conveyed only a royalty interest—a right to share in oil or gas produced—then the statute is not applicable. The trial court held for the defendants, construing the instrument to be a mineral deed, and the plaintiff appeals.

Appellant, Mary Ellen Hickey, was owner of the quarter section of land in question, located in Barton county. On January 27, 1933, she conveyed the land, by warranty deed in which her husband, M. E. Hickey, joined, to the Olmitz State Bank of Olmitz, Kan. As

part of the deal and on the same day the bank conveyed back to Mrs. Hickey certain interests by the instrument here in question. About three years prior thereto—on March 10, 1930—Mrs. Hickey and her husband had given an oil and gas lease, for a primary term of ten years, to W. H. Skelton. About five months after the deed to the bank—on June 6, 1933—the bank sold the land to Edd C. Dirks and Jessie G. Dirks, the appellees here. This deed by the bank to Dirks was, by its specific terms, made subject to the conveyance theretofore made to Mrs. Hickey. Delayed rentals were apparently paid under the Skelton lease, which was surrendered sometime in 1939, before the expiration of the primary term. In October, 1939, the Dirks gave an oil and gas lease on the land to W. A. Porter, who assigned it to Geo. H. Hannum, Inc., and sometime in the spring of 1940 the Hannum company drilled on the tract, getting a producing gas well—all within the primary term of the Skelton lease. Claiming as a royalty owner, Mrs. Hickey demanded the right to share in the proceeds of production. Her demand being denied by Dirks, action was brought to enforce her rights under the instrument. By consent of Dirks the pipe-line company to which the gas was delivered has withheld—without prejudice to the rights of Dirks—the proportionate royalty which would be due to Mrs. Hickey if she has a valid claim. We need not summarize the pleadings, no question being raised as to the manner or method by which the issues were joined.

As we have had frequent occasion to observe, terms relating to conveyances of oil and gas interests have often been loosely and inaccurately used. (*Volker v. Crumpacker*, 154 Kan. 403, 405, 118 P. 2d 540, and cases there cited.) This is particularly true with reference to the term "royalty." A mineral deed is one which involves a severance, from the fee, of a present title to minerals in place. It either effects such severance of title in the first instance or conveys a part of such mineral ownership previously carved from the fee. It is a realty conveyance. (*Rathbun v. Williams*, 154 Kan. 601, 604, 121 P. 2d 243, and cases there cited.) "Royalty" is that part of oil and gas payable to the lessor by the lessee out of oil and gas produced. It is sometimes referred to as part of the compensation to the title owner for the privilege of exploring, developing, and producing oil and gas from the tract. Under our statutes and decisions it is regarded as personal property. (G. S. 1935,

79-329, 79-330; *Rathbun v. Williams,* supra; *Davis v. Hurst,* 150 Kan. 130, 90 P. 2d 1100, and cases there cited.)

Transfers of "royalty" are not covered by the provisions of G. S. 1935, 79-420 (*Gas Company v. Neosho County,* 75 Kan. 335, 89 Pac. 750; *Finch v. Beyer,* 94 Kan. 525, 146 Pac. 1141; *Robinson v. Jones,* 119 Kan. 609, 240 Pac. 957; *Richards v. Shearer,* 145 Kan. 88, 64 P. 2d 56).

In drafting the instant instrument the scrivener, who was the president of the bank, used a printed form, inserting in addition to names, description of the tract, etc., statements to indicate the intention of the grantor. Omitting formal portions not essential to our inquiry, the conveyance was as follows (interlineations by the scrivener being indicated by italics):

"SALE OF OIL AND GAS ROYALTY

"KNOW ALL MEN BY THESE PRESENTS, That the Olmitz State Bank of Olmitz, Kansas, . . . for and in consideration of the sum of one dollar and other good and valuable consideration ($1) cash in hand paid by Mary Ellen Hickey, hereinafter called grantee, the receipt of which is hereby acknowledged, have granted, sold, conveyed, assigned and delivered, and by these presents do grant, sell, convey, assign and deliver unto said grantee an undivided *one-thirty-second (1/32) it being intended to convey one-fourth of grantors reserved one-eighth royalty* interest in and to all of the oil, gas and other minerals in and under, and that may be produced from the following described land situated in *Barton* county, *state of Kansas,* to wit:

". . . together with the right of ingress and egress at all times for the purpose of mining, drilling and exploring said lands for oil, gas and other minerals and removing the same therefrom, with the right at any time to remove any· or all equipment in connection therewith.

"Said land being now under an oil and gas lease executed in favor of *W. H. Skelton,* it is understood and agreed that this sale is made subject to the terms of said lease, but covers and includes *one-fourth (¼)* of all the oil royalty, and gas rental or royalty due and to be paid under the terms of said lease.

"It is understood and agreed that *none* of the money rentals which may be paid to extend the term within which a well may be begun under the terms of said lease is to be paid to the said grantee and in the event that the above described lease for any reason becomes canceled or forfeited then and in that event an undivided ·*one-fourth* of the lease interests on said land for oil, gas and other mineral privileges shall be owned by the said grantee owning *one-fourth* of all oil, gas and other minerals in and under said lands, together with *one-fourth* interest in all future events, *it being the intention hereof that grantee shall have no interest in cash rentals or bonuses paid under any future oil or gas lease thereon.*

"To have and to hold the above described property, together with all and singular the rights, appurtenances thereto in anywise belonging unto the said grantee herein, *her* heirs and assigns, *for a term of ten (10) years from this*

*date, and as long as oil or gas are being produced therefrom or may be produced therefrom in paying quantities;* and . . . do hereby bind its heirs, successors, executors and administrators to warrant," etc.

It is at once apparent that there is some ambiguity in the instrument, some inconsistency between certain portions of the printed form and the interlineations. Some familiar rules of construction here apply. The first is that the important thing is to determine intent, and that this is to be done by examination of the instrument as a whole—"from its four corners." (16 Am. Jur. 531, 533, 534; 26 C. J. S. 328 *et seq.*) The second is that in determining intent special weight is to be given to the provisions written into a printed form by the scrivener (16 Am. Jur. 538; 26 C. J. S. 331).

Having carefully examined the instant instrument, with these principles in mind, we have no hesitancy in saying that it was the intention of the grantor to convey a royalty interest rather than a title interest in the oil and gas in place. First, note the important interlineation, which recites that grantor conveys to grantee an undivided "one-thirty-second (1/32) it being intended to convey one-fourth of grantor's reserved one-eighth royalty" interest, etc. When the instrument was executed the tract was then subject to the Skelton lease under which the bank, as holder of the whole fee under the deed from the Hickeys was entitled to a royalty—the usual one-eighth of production. Clearly it was the intention as part of the whole deal—evidenced by the instruments executed the same day—to convey back to Mrs. Hickey a one-fourth of this royalty interest—which had been hers prior to her deed to the bank. This would be a "one-thirty-second interest" in the oil and gas produced. As to this first interlineation the appellees suggest that the scrivener should have inserted a comma after the words "one-thirty-second"—and presumably after the word "royalty"— and that this punctuation would strengthen construction of the instrument as a mineral deed. But if we were to insert the commas and treat the words between them as parenthetical, what part of the minerals in place could be said to be conveyed? Obviously a "one-thirty-second" interest in the minerals in place. That would entitle the grantee not to one-fourth of one-eighth of the oil produced but only to one-thirty-second of one-eighth, or 1/256 of the oil produced. Further, that would be inconsistent with appellees' contention that the intention was to convey to grantee one-fourth of the oil and gas in place. To conform to appellees' general con-

struction of the instrument we would not only have to insert the commas but also strike out "one-thirty-second" (first words of the interlineation) and substitute "one-fourth."

The instrument further provides that while the grantee is to have one-fourth of any royalty paid under the existing Skelton lease, she is not to share in any delay rentals and that is "the intention hereof that grantee shall have no interest in cash rentals or bonuses paid under any future oil or gas lease thereon." If the instrument conveyed, as appellees contend, a title ownership to one-fourth of the minerals in place then she would normally be entitled to her share of rentals and bonuses. The provision that she was not to be so entitled is in line with the view that the intention was to convey royalty interest only.

Note, further, the last interlineation indicated above. The provision that the grantee was to have and hold the interest conveyed "for a term of ten (10) years from this date, and as long as oil or gas are being produced therefrom or may be produced therefrom in paying quantities." That provision is more consonant with the idea of royalty, being the usual provision under which a lessor preserves his royalty rights under a lease.

As already noted, there are one or two provisions in the printed portions which may be said to support appellees' contention. The principal one is the provision that in certain event, "an undivided one-fourth of the lease interests on said land for oil, gas and other mineral privileges shall be owned by the said grantee *owning one-fourth of all oil, gas and other minerals in and under said land,*" etc. These words do not constitute part of the granting clause and cannot prevail as against the various other provisions, written in, which indicate conveyance of royalty interest.

In addition to intrinsic evidence of intention, in the instrument itself, we have in the record some pertinent extrinsic evidence which supports appellant's construction. The deed of the bank to the appellees, executed June 6, 1933, carried the following reservation:

"Subject, however, to a certain oil and gas royalty deed dated January 27, 1933, in which Mary Ellen Hickey, is named the grantee, said instrument conveying a one-fourth of the grantor's reserved one-eighth royalty interest in and to all of the oil, gas or other minerals, in and under and that may be produced from the lands herein conveyed."

Further, into a quitclaim deed executed on November 10, 1939, by the bank to Dirks there was written the following:

"The intent and purpose of the Olmitz state bank, in making this conveyance, is to straighten out the title with reference to an oil and gas royalty deed dated January 27, 1933, to Mary Ellen Hickey as grantee, and conveying a one-fourth of the grantor's reserved one-eighth royalty in and under the above described real estate. . ."

The usual royalty reserved or provided for in the Skelton lease had passed to the bank by the deed from the Hickeys and one-fourth of such reserved royalty interest had been in turn conveyed by the bank to Mrs. Hickey.

Appellees stress the fact that Schreiber, president of the bank, who prepared the instrument and signed it for the bank, was unable, when testifying, to distinguish, by definition, between mineral deeds and royalty conveyances. That is not wholly surprising. But he did write into the conveyance provisions which mean royalty, and he testified that in negotiating with Dirks for sale of the land he told him that "one-fourth of the royalty was reserved by Mrs. Ellen Hickey." While objection was made to this testimony and motion made to strike it out, the record is not clear that the answer was stricken out. But even if we disregard the answer we still have the testimony that after the bank sold the tract to Dirks the delay rentals were turned over to Dirks. And there was no testimony that Dirks paid any of these rentals to Mrs. Hickey who, if holder of title to minerals in place, would have been entitled to her proportionate share of such rentals.

What has been said disposes of the only question passed upon by the trial court. Appellees contend, however, that even if the instrument be construed as a conveyance of royalty only, any rights held by the appellant expired, either (a) at the time appellees became the owners of the land; or (b) when the term of the Skelton lease expired, or (c) upon release of the Skelton lease on November 8, 1939. While the appellant does not discuss the question, there may be doubt whether these questions, raised by appellees, are here for review. However, in view of the fact that the trial court quieted title in appellees as against appellant's claim we will discuss them briefly.

The first contention is clearly untenable. The deed of the bank to appellees specifically referred to the conveyance of royalty to appellant and was made subject to it. Appellees cannot be heard to deny validity of the reservation contained in the deed under which they hold title. The second contention is not good because the con-

veyance by the bank to Mrs. Hickey provided that she was to hold the interest therein conveyed "for a term of ten (10) years from this date, and as long as oil or gas are being produced therefrom or may be produced therefrom in paying quantities." Production was secured during the ten-year period, and the royalty interest of appellant did not lapse while production in paying quantities continued thereafter. The third contention must likewise be rejected. Release of the Skelton lease in November, 1939, did not terminate appellant's rights. While under the terms of the instrument she was entitled to one-fourth of any royalty payable under the Skelton lease, her rights were not confined to the Skelton lease. She was granted a one-fourth royalty interest (1/4 of 1/8 of production) during a ten-year period and while oil or gas production continued thereafter, and such grant was not dependent upon the Skelton lease.

The judgment must be reversed with directions to enter judgment for the plaintiff. It is so ordered.

PARKER, J., not participating.