No. 41,024

KARL O. MAGNUSSON, *Plaintiff-Appellee*, v. COLORADO OIL AND GAS CORPORATION et al., *Defendant-Appellant*.

(331 P. 2d 577)

Opinion filed November 8, 1958.

*Ferd E. Evans, Jr.,* of Wichita, argued the cause, and *Lester L. Morris, Verne M. Laing, Ralph R. Brock* and *J. Edward Taylor, Jr.,* of Wichita, were with him on the briefs for Appellant.

Appellee makes no appearance.

The opinion of the court was delivered by

Fatzer, J.: This was an action to quiet title to certain land in Cowley County, Kansas.

The appellee filed a petition alleging himself to be the owner in fee simple and in actual possession of the land involved in this controversy; that he and his predecessors in title had been in open, adverse, continuous and exclusive possession of the same for fifteen years under claim of title, and that named defendants, including the Colorado Oil and Gas Corporation, claimed some interest therein, the nature of which was unknown to appellee but that the same constituted a cloud on his title. The prayer was for a decree quieting appellee's title in fee simple against the claims of defendants.

Appellant Colorado Oil and Gas Corporation answered by way of a general denial, and in its cross-petition alleged that on June 29, 1916, one Frank M. Rogers and Mary D. Rogers, his wife, the then owners in fee simple of the land in question, conveyed to one Walter Henning by an instrument in writing, hereafter referred to as the Rogers deed, an undivided one-half of the royalty and an undivided one-half interest in and to the oil and gas lying under said land, which was duly recorded in Cowley County on July 3, 1916. Various conveyances and corporate mergers were alleged leading to appellant's succession in interest to the rights and title conveyed to Walter Henning by the Rogers deed. Appellant prayed for a de-

cree quieting its title to an undivided one-half interest in and to the minerals in and under the real property concerned.

No further pleadings are shown by the record. Facts stipulated consist of the Rogers deed, hereafter set forth; an oil and gas lease referred to therein; that by mesne conveyances the appellant is the owner of whatever interest was acquired by Walter Henning as grantee under and by virtue of the Rogers deed, and, that by mesne conveyances from Frank M. Rogers and Mary D. Rogers, the appellee is the owner of the surface rights and all minerals not owned by the appellant. At the time the Rogers deed was executed and delivered there was of record on the same land an oil and gas lease executed by the Rogers on December 17, 1915, in favor of H. M. Benedum and J. C. Trees for a primary term of five years from date. The lease provided for a royalty of one-eighth of the oil produced and the sum of $300 per year for each gas well used thereon. No other facts appear of record. The decree of the district court adjudged appellee to be the owner in fee simple and ordered his title quieted against all defendants. Appellant's motion for a new trial was overruled, and this appeal followed.

The record does not so indicate, but appellant asserts the district court apparently held that the Rogers deed conveyed title to a perpetual royalty interest only, rather than to the minerals in place, and was therefore void, being in violation of the rule against perpetuities. The appellant contends the Rogers deed conveyed oil and gas in place—real property—and that the rule against perpetuities clearly does not apply, as title to such minerals vested immediately upon delivery of the deed on June 29, 1916, and was not contingent upon anything happening in the future.

As preliminary to discussing appellant's contentions, we consider the possibility that the judgment of the district court was based upon a finding that the appellee obtained title in fee simple by adverse possession. We note, without further comment, that the record contains no evidence to support such a finding; consequently, a judgment in favor of appellee based upon such a finding could not stand.

The correctness of the judgment of the district court depends upon the construction to be given the Rogers deed, which reads:

"ROYALTY DEED.

"THIS INDENTURE, made this 29th day of June, 1916, between Frank M. Rogers, and Mary D. Rogers, his wife, of Cowley County in the State of Kansas, parties of the first part, and Walter Henning of Sedgwick County, in the State of Kansas, party of the second part.

"WITNESSETH, that whereas the first parties are the owners of the following described lands situated in Cowley County, Kansas, to-wit: Lot 2, and the Southeast Quarter of the Northwest Quarter of Section 31, Township 30, Range 4 East, containing 80 acres more or less, and whereas said first parties did on December 17, 1915, give to H. M. Benedum and J. C. Trees a certain oil and gas lease on said lands, under which lease the first parties are to receive a royalty of ⅛ part of all oil produced from said premises, and $300 per year for each gas well used thereon.

"Now, THEREFORE, the parties of the first part, for and in consideration of the sum of $5,000 to them duly paid, have sold and by these presents do grant, bargain, sell and convey to the said party of the second part, his heirs and as-signs, the one-half part of all of the royalties reserved to first parties under the said gas and oil lease, and any other leases or contracts which may have there-tofore been given, or may hereafter be given by first parties, for the oil and gas under said land.

"AND FOR THE same consideration, the parties of the first part do hereby sell and convey unto the second party, his heirs and assigns, an undivided ⅟₁₆ in-terest in all the oil which may lie under the land aforesaid, and ½ of the first parties interest in any gas lying under said land, the same being, so far as the Benedum & Trees lease aforesaid, is concerned, ½ of the royalties reserved to first parties thereunder.

"AND THE said H. M. Benedum and J. C. Trees, and all other persons who may at any time produce oil on said land, are hereby directed to pay to the said Walter Henning, his heirs and assigns, ½ of the royalties provided in said existing lease or ⅟₁₆ of all oil produced from said premises, and ½ of any gas royalties thereon.

"To HAVE AND TO HOLD the same in the said party of the second part.

"AND THE SAID parties of the first part do hereby covenant and agree that at the delivery hereof, they are the lawful owners of the rights herein granted, and will forever warrant and defend the same and every part thereof to the party of the second part, his heirs and assigns forever.

"THIS CONVEYANCE shall not be construed to convey any surface right in the said described land.

"IN WITNESS WHEREOF, the said parties of the first part have hereunto set their hands and seals the day and year above written.

Frank M. Rogers,<br>Mary D. Rogers."

Time and again this court has reiterated the distinction between minerals in place and a royalty interest in the event minerals are produced. The former constitutes real property, and the latter is personal property being only a right to share in the minerals actually produced and saved. In *Lathrop v. Eyestone*, 170 Kan. 419, 227 P. 2d 136, it was held:

"A mineral deed is one which makes a severance, from the fee, of a present title to minerals in place. It is actually a realty conveyance.

" 'Royalty' in its ordinary meaning is that part of oil and gas payable to the lessor by the lessee out of oil and gas actually produced and saved. It is the compensation to the lessor provided in the lease for the lessee's privilege of drilling and producing oil or gas and does not include a perpetual interest in and to oil and gas in place. It is not uncommon to find 'royalty' shortly defined as 'a share' in production 'paid.' " (Syl. ¶¶ 1 and 2.)

In the recent case of *Froelich v. United Royalty Co.*, 178 Kan. 503, 290 P. 2d 93, this court had occasion to again make this distinction, as follows:

". . . There is a definite difference between minerals in place and minerals severed and produced from the land. Minerals, including oil and gas, in place or in and under the land are termed as realty, are part of the land or fee, or real estate, and a transfer of interests in this type of mineral is held to be a severance of the fee. In other words, one person may own the surface of the land while another person may own the minerals under the surface. On the other hand, royalty in oil and gas severed and produced from the land under an oil and gas lease is merely personal property and does not create any interest in the minerals under the land or cause a severance of the fee. . . ." (l. c. 507.)

See, also, *Bellport v. Harrison*, 123 Kan. 310, 255 Pac. 52; *Burden v. Gypsy Oil Co.*, 141 Kan. 147, 40 P. 2d 463; *Richards v. Shearer*, 145 Kan. 88, 64 P. 2d 56; *Rathbun v. Williams*, 154 Kan. 601, 121 P. 2d 243, and *Hickey v. Dirks*, 156 Kan. 326, 327, 133 P. 2d 107.

In construing the Rogers deed, several rules of construction are applicable. Although all are elementary and therefore beyond dispute, we nonetheless make note of them. The cardinal or principle rule in construing deeds or other written instruments is that the intent and purpose of the grantor is to be determined from an examination of the entire instrument, or, as is sometimes stated, from the four corners of the instrument, that is to say, all the language used anywhere in the instrument should be taken into consideration and construed in harmony with other provisions of the instrument. (*Howe v. Howe*, 94 Kan. 67, 145 Pac. 873; *Skelly Oil Co. v. Cities Service Oil Co.*, 160 Kan. 226, 231, 160 P. 2d 246; *Epperson v. Bennett*, 161 Kan. 298, 167 P. 2d 606; 16 Am. Jur., Deeds, § 171, p. 534.) Although all parts of the instrument are to be considered, the granting clause is paramount in determining what interest was intended to be granted. (*Hickey v. Dirks*, supra, p. 330; *Lathrop v. Eyestone*, supra.)

Another rule which requires application is that the word "royalty" is often loosely used in the petroleum industry and, therefore, the true nature of an instrument is not to be determined by the label

attached thereto, but, rather, from the contents of the instrument. (*Lathrop v. Eyestone*, supra, p. 423; *Serena v. Rubin*, 146 Kan. 603, 72 P. 2d 995; *Fry v. Dewees*, 151 Kan. 488, 99 P. 2d 844.) In the Lathrop case it was said:

"As we have frequently stated the term 'royalty' is often rather loosely and inaccurately used by men in the petroleum industry, those dealing in oil and gas holdings and at times by attorneys. Some persons refer to oil and gas in place as royalty. Others refer to royalty as the landowner's share in production. We have, therefore, repeatedly held the true nature and character of the instrument is not to be determined by the name or label attached thereto but by its intent as reflected by the terms, the contents thereof. . . ." (l. c. 423.)

See, also, *Froelich v. United Royalty Co.*, supra, pp. 506, 507. However, notwithstanding these rather conclusive statements, it is likewise the rule that where the title of the instrument is similar to the one here under consideration, "Royalty Deed," the contents of the instrument must make it clear that it is something else than what its title indicates (*Skelly Oil Co. v. Cities Service Oil Co.*, supra, p. 230).

An examination of our many decisions indicates that instruments entitled "Sale of Oil and Gas Royalty" have been held to be conveyances of minerals in place effecting a severance of title to oil and gas from the surface of the land. See, *Richards v. Shearer*, supra; *Serena v. Rubin*, supra; *Fry v. Dewees*, supra; *Sledd v. Munsell*, 149 Kan. 110, 86 P. 2d 567, and *Rutland Savings Bank v. Steele*, 155 Kan. 667, 672, 127 P. 2d 471.

With those rules in mind, we now analyze the Rogers deed. The "whereas" clause describes the land in question and refers to the Benedum and Trees oil and gas lease. Under that lease the grantors are to receive "a royalty of ⅛ part of all oil produced" and the sum of $300 per year for each gas well. Then follows the first granting clause in which the Rogers "grant, bargain, sell and convey" to Henning "the one-half part of all of the royalties reserved" under the Benedum and Trees lease and any other leases theretofore or thereafter given. It is clear that the term "royalty" or "royalties" used in the "whereas" clause and in the first granting clause is properly used and refers to a share of production. The proper use of that term in those two clauses indicates the parties to the Rogers deed, and particularly the grantors, knew what a true royalty interest was. Had the Rogers deed stopped at the end of the first granting clause, the judgment of the district court would have been

correct. However, the Rogers deed did not stop at the end of the first granting clause. It contained a second granting clause, effect to which must be given, not only because of rules of construction, but also because of the clear import of the language of the clause itself. That clause is prefaced by the words "AND FOR THE same consideration . . ." This was not a restatement of the first granting clause, but was intended to convey something in addition to what had already been assigned or conveyed. By the terms of the second granting clause, the Rogers did "sell and convey unto the second party (Henning), his heirs and assigns, an undivided (fractional) interest in all the oil which may lie under the land aforesaid, and (a fraction) of the first parties interest in any gas lying under said land."

The decisions of this court are uniform that a grant and conveyance of minerals in and under or lying under certain lands, or words of similar import, is a grant and conveyance of present title of minerals in place, without regard to when or by whom they may be produced and severed to become personal property. (*Gas Co. v. Oil Co.*, 83 Kan. 136, 109 Pac. 1002; *Horville v. Cement Co.*, 105 Kan. 305, 182 Pac. 548; *Hushaw v. Kansas Farmers Union Royalty Co.*, 149 Kan. 64, 86 P. 2d 559; *Sledd v. Munsell*, supra; *Shaffer v. Kansas Farmers Union Royalty Co.*, 146 Kan. 84, 69 P. 2d 4.)

Both granting clauses of the Rogers deed must be read together and construed in harmony with each other and with other provisions of the instrument. When this is done, it is clear that two things were assigned or conveyed by the grantors. First, a fractional interest in all the oil "which may lie under the land" and "in any gas lying under said land." This conveyed a present interest in the oil and gas under the land in question. Second, a corresponding fractional royalty interest in and to all the oil produced and saved under the Benedum and Trees lease, or any lease theretofore or thereafter given, and a fractional royalty interest in the sum paid per year for each gas well. Although the form of the Rogers deed may be somewhat different from more standard instruments, nonetheless, the practice of assigning or conveying a corresponding royalty interest under existing and future leases in a mineral deed is customary. (Stanton, "Recent Developments in the Construction of Mineral and Royalty Grants and Reservations," *Seventh Annual Institute on Oil and Gas Law and Taxation* [Southwestern Legal Foundation, 1956], p. 317.)

Generally speaking, a grant and conveyance of minerals in place which also includes an assignment of a corresponding royalty interest does not in any way limit the property conveyed to that of a mere royalty. In *Shaffer v. Kansas Farmers Union Royalty Co.,* supra, this court was concerned with that type of instrument, and in the course of the opinion it was said:

"Appellees point out two things in the instrument which, they argue, take it out of the class of instruments conveying minerals in place. It will be observed the instrument conveys the undivided half of 'the oil, gas and other minerals in and under, and that may be produced from' the land. Appellees point to the words 'and may be produced from' as indicating that production only is what the parties had in mind. The point is not well taken. It is not a limitation upon the grant of 'oil, gas and other minerals in and under' the land. Possibly the clauses referred to two things, but that construction would not prevent the instrument being a conveyance of minerals in the land. More likely the latter clause was used because oil and gas are to some extent fugitive fluids and the parties desired to make it clear that it applied to the oil and gas under the land at the time operations thereon produced oil and gas therefrom, avoiding any possible necessity of having to show that they were in or under the land at the time the instrument was executed." (l. c. 91, 92.)

Other provisions of the Rogers deed following the second granting clause do not, in our opinion, limit the grant and conveyance to a share of the royalties under the Benedum and Trees lease, but tend to confirm the grant of a present title to minerals in place. Consistent with a grant of minerals in place, Benedum and Trees "and all other persons who may at any time produce oil on said land," were directed to pay to Henning, *his heirs and assigns* a share of the royalties under the existing lease or "of all oil produced from said premises" and "of any gas royalties thereon." The character of the instrument is indicated to some extent by the fact that the grant was extended to the heirs and *assigns* of the grantee. (*Gas Co. v. Oil Co.,* supra, p. 141.) Other provisions also confirm the grant of minerals in place. The covenants of seizin and warranty are those ordinarily found in deeds conveying real property (*Shaffer v. Kansas Farmers Union Royalty Co.,* supra). Furthermore, the recitation that "THIS CONVEYANCE shall not be construed to convey any surface right" indicates that the parties recognized the surface and the minerals were being severed, and they expressly provided that no part of the surface right was granted and conveyed.

The district court apparently misinterpreted the instrument in viewing it as an assignment of a perpetual royalty only. If meaning

and effect are to be given to all the provisions of the Rogers deed, it can only be construed and harmonized as conveying a present title to minerals in place under the land in question.

It is not uncommon in the history of the oil industry for parties to mineral deeds to confuse the fractional interest conveyed. On two previous occasions this court has dealt with fractional ambiguities created by such confusion, and in each case readily recognized the nature of the problem. See, *Lathrop v. Eyestone,* supra, and *Froelich v. United Royalty Co.,* supra, opinion on rehearing 179 Kan. 652, 297 P. 2d 1106, reference being hereafter made to each.

As the most common leasing arrangement provides for a one-eighth royalty reserved to the lessor, the confusion of fractional interests stems primarily from the mistaken premise that all the lessor-landowner owns is a one-eighth royalty. In conveying minerals subject to an existing lease and also assigning a corresponding fractional interest in the royalties received, mistake is often made in the fraction of the minerals conveyed by multiplying the intended fraction by one-eighth. Thus, if a conveyance of an undivided one-half of the minerals is intended, the parties will multiply one-half by one-eighth and the instrument will erroneously specify a conveyance of one-sixteenth of the minerals upon the assumption that one-sixteenth is one-half of what the grantor owns. An ambiguity is created because the instrument will also show that the conveyance of one-sixteenth of the minerals is meant to entitle the grantor to one-half of the royalty. Of course, an undivided one-half of the minerals is needed to carry one-half of any royalties reserved. (Masterson, "A Survey of Basic Oil and Gas Law," *Fourth Annual Institute on Oil and Gas Law and Taxation* [Southwestern Legal Foundation, 1953, pp. 254, 255].)

It is not only persons in the petroleum industry who make this type of inadvertent mistake, but on occasion this mistake has been made by courts. In *Lathrop v. Eyestone,* supra, the first instrument construed therein (which was held to convey minerals in place) recited, as in the instant case, that the lands were subject to a lease providing for a one-eighth royalty. The granting clause conveyed an undivided one-fourth interest in the "oil and gas right, title and claim." The district court held that the grantee acquired an undivided one thirty-second interest in the minerals. This court properly recognized the nature of the error in the following language:

". . . The trial court concluded Hall had a one thirty-second interest in and to the oil and gas in place. It, apparently, but we think erroneously, calculated that fractional interest on the theory of one fourth of one eighth, that is one fourth of the grantors' royalty, which would be one fourth of the grantors' share in production. . . ." (l. c. 425.)

The same error of multiplying the intended fractional mineral interest by one-eighth was made by the parties to the various instruments involved in *Froelich v. United Royalty Co.*, supra, modified on rehearing, 179 Kan. 652, 297 P. 2d 1106. As indicated by the opinion on rehearing, the first quoted paragraph of the original declaration of trust there involved recited that the royalty pool was to be completed when the royalty company had secured a one-sixteenth royalty on a certain number of acres. Under the common leasing arrangement this would require obtaining one-half of the minerals. However, the second quoted paragraph of the declaration then stated that the grantors agreed to deliver to the royalty company only a one-sixteenth interest in the minerals in place. The royalty conveyance which was recorded then set over and assigned an undivided one-half of the royalties. This court recognized the mistake creating this fractional ambiguity, and the instrument was construed in accord with the obvious intent of the parties as follows:

". . . Thus it can readily be determined from the clear and unambiguous language of the declaration of trust and the royalty conveyance that the interest United received was one half of the rights of the fee.owner in the oil and gas minerals in and under the ground and one half of the royalty reserved to the fee owner when such minerals were severed or extracted from and brought to the surface of the ground.

"This is in keeping with the first quoted paragraph of the contract and royalty pooling agreement, which becomes somewhat ambiguous when the second quoted paragraph thereof is considered. It can readily be seen that the interest created by such second quoted paragraph would result in United getting $\frac{1}{128}$th of the royalty because seven eighth of the minerals in place inure to the so-called working interest in severing and producing such minerals for market. This leaves only one eighth so-called royalty reserved to the fee owner and if United were to receive only one sixteenth of that, this would amount to a $\frac{1}{128}$th interest which, as we have said, was not the intent of the Butlers, United, or any of the other participating landowners in the pool when all three of the documents are considered together." (l. c. 654, 655.)

The Rogers deed likewise obviously intended to convey an undivided one-half interest of the grantors in the oil and gas in place. The mistake in the second granting clause setting forth a fraction

of one-sixteenth of the oil is exactly the same inadvertent mistake that was made by the parties in the Froelich case. The Rogers deed in the first granting clause and in the direction to Benedum and Trees and all other producers, specifies a royalty to the grantee of one-half. As in Froelich, quite obviously the grantee was to receive one-half of the rights of the grantors in the oil and gas in place and one-half of the royalty when the minerals were extracted. The fraction of one-sixteenth contained in the second granting clause clearly is in error as that would entitle the grantee only to a 1/128th of the royalty.

In the instant case the Rogers deed itself reveals its own error. In fact, the second granting clause in which the one-sixteenth error was made, standing alone, shows that the fraction of one-sixteenth was not intended. The second granting clause, after conveying a one-sixteenth interest in the oil "and ½ of the . . . gas" then states:

"*the same being, so far as the Benedum & Trees lease aforesaid, is concerned, ½ of the royalties reserved to first parties thereunder.*" (Emphasis supplied.)

In short, the second granting clause of the Rogers deed itself defines its error by stating, in effect, that the parties believed that ownership of one-sixteenth of the oil in place entitled the grantee of one-half of the royalty reserved.

In view of the foregoing the instrument involved herein is construed to convey the title of an undivided one-half interest in and to the minerals in place lying under the land in question which vested upon delivery of the Rogers deed on June 29, 1916. The district court erred in its judgment quieting title in appellee in those minerals and in failing to hold that the appellant is the owner of an undivided one-half interest in and to the oil and gas in place. Accordingly, the judgment of the district court is reversed with directions to render judgment for each of the parties in conformity with the views expressed herein.

It is so ordered.